# EXHIBIT B

 **TroyGould**
ATTORNEYS

**TROYGOULD PC**
1801 Century Park East, 16th Floor
Los Angeles, California 90067-2367
*Tel* (310) 553-4441 *Fax* (310) 201-4746
www.troygould.com

Christopher A. Lilly • (310) 789-1265 • clilly@troygould.com

File No. 03932-0001

January 14, 2019

**BY U.S. MAIL AND PDF E-MAIL**

Robert Feigin, Esq.
Hutchings Barsamian Mandelcorn, LLP
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
**E-mail: rfeigin@hutchingsbarsamian.com**

     Re:    Demand Letter

Dear Mr. Feigin:

As you know, TroyGould PC has been retained by Kaizen Advisors, LLC ("KZA") in connection with the purchase of AO Eyewear, Inc. ("AOI"). TroyGould has now also been retained by KZA to enforce KZA's rights in that purchase transaction.

As you also know, the work on the KZA side has been extensive and expensive, running for nearly two years. Specifically, on or about February 24, 2017, KZA and AOI entered into a binding Letter of Intent ("LOI") that provided for, as relevant here: (1) exclusivity, i.e., that AOI would not discuss the sale of its stock (among other methods of purchase) with other parties for 120 days; and (2) confidentiality and non-circumvention, i.e., that AOI would not share with third party buyers the negotiations between KZA and AOI or the status thereof, including the price KZA offered to purchase AOI and the due diligence KZA has performed on AOI at considerable expense.

When your client, Alan McKinley on behalf of AOI, sent his June 27, 2017 email to our client, he stated that the exclusivity period expired on June 24, 2017, but he did not terminate the LOI. As such, at most, the exclusively period expired on June 24, 2017; however, all of the remaining terms of the LOI remained binding, including the agreement to cooperate to negotiate definitive agreements and the confidentiality and non-circumvention provisions (Paragraph 11 provides for termination of the exclusively provision only, or the LOI in its entirety, the latter of which is something AOI did not do).

The parties also entered into a January 2018 Non-Disclosure and Non-Circumvention Agreement with a three-year term ("NCNDA"), which was entered into in connection with and in support of KZA's acquisition of AOI. Among other things such as confidentiality, the NCNDA contains a non-circumvention provision prohibiting AOI from entering into "any transactions, for financing or otherwise, with any entity (including such entity's affiliates and related entities) first introduced by the Disclosing Party without receiving express prior written consent from the Disclosing Party." A copy of the NCNDA

03932-0001 324972.6

 **TroyGould**
ATTORNEYS

Robert Feigin
January 14, 2019
Page 2

is attached to this letter as **Exhibit A**. Paulino Diaz is a party to the NCNDA and his role was to support and facilitate KZA's acquisition of AOI. It was expected that he would become an employee of the acquiring company. He is currently an agent on behalf of KZA.

During the period between the execution of the LOI and your client's termination email of December 2018, AOI has consistently led KZA to believe that AOI is moving forward with the purchase-sale agreement <u>with</u> KZA.

A few examples will suffice. In the June 27 email, Mr. McKinley stated that he is "eager to move this sale along" and that KZA has "the passion and skill set that AO Eyewear, Inc. deserves."

In his August 10, 2018 email, Mr. McKinley stated that: "I have always held faith that our deal would somehow workout and close. I share your excitement for the program and developing the AO Brand over the next several years. Like you, I'd like to get this done soon."

In his October 19, 2018 email, Mr. McKinley stated that: "I look forward to working with you after the closing"; and "I look forward to receiving your draft P&S that follows these comments. At that point, I will re-engage [you] Bob Feigin (my attorney) to move this towards a quick Closing."

On or around December 7, 2018, during a lengthy call between Mr. McKinley and Ari Kaplan, Mr. McKinley told Mr. Kaplan, in words to this effect, that: all was good, all systems are a go, and he would like to close by January 31, 2019 if possible.

KZA advised AOI of costs related to the transaction before they were incurred, and based on assurances such as the foregoing, KZA proceeded with incurring more and more due diligence and transaction related costs. These include, among others, the significant costs of diligence on AOI's trademarks, which review was conducted by the law firm of ReedSmith, the cost of preparing a detailed Membership Interest Purchase Agreement, and financing costs.

Nevertheless, AOI has, based on information we have received, engaged in negotiations with Europa Eye Wear Corp. and/or its affiliates ("EUROPA") for EUROPA to purchase AOI, and in so doing, shared confidential information with EUROPA that is protected by and in breach of the LOI and NCNDA.

This is to advise you that KZA plans to file a lawsuit for, among other things, the following.

03932-0001 324972.6

 **TroyGould**
ATTORNEYS

Robert Feigin
January 14, 2019
Page 3

**Breach of the NCNDA:** The NCNDA prevents AOI now and for the next two years from entering into any transaction with a third party introduced to AOI. Mr. Diaz introduced AOI to EUROPA.

Because of that introduction, AOI is prevented from entering into any purchase-sale transaction with EUROPA (or any other transaction) without the written consent of KZA and/or Mr. Diaz. No such written consent has or will be given by KZA. We have also been informed that Mr. Diaz has not and does not intend to grant such consent either.

Hence, AOI is in direct breach of the NCNDA.

**Breach of the LOI:** As set forth above, the confidentiality and non-circumvention provisions of the LOI remained in effect after AOI's June 27 email. And the confidentiality and non-circumvention provisions were plainly in effect when EUROPA was introduced to AOI.

By sharing information from the purchase-sale negotiations and status thereof between AOI and KZA with EUROPA, AOI breached the confidentiality and non-circumvention provisions of the LOI. In furtherance of the claim, KZA plans at the earliest date possible to conduct the depositions of the principals of EUROPA.

Further, KZA plans at the earliest date possible to conduct depositions of Mr. McKinley and other employees and agents of AOI to determine exactly what information AOI provided to any other third parties. If any discussions or disclosures about KZA's purchase of AOI occurred during or before June of 2017, KZA obviously reserves the right to and will sue for breach of the exclusively provision.

**Breach of the Convent of Good Faith and Fair Dealing:** Based on the assurances identified above as examples, and many more, AOI led KZA to believe that it was moving forward with the purchase transaction with KZA. Yet in reality, AOI was merely stringing KZA along in order to re-negotiate for more favorable terms (as evidenced by multiple emails from Mr. McKinley); and then also use KZA's offer to obtain a competitive bid from EUROPA, all the while making assurances with regards to AOI's commitment to the transaction at the significant expense of KZA which AOI was aware and even in light of the pleadings by KZA to be informed of if AOI had doubts about continuing with the transaction. This is a breach of the covenant inherent in both the LOI and NCNDA.

Indeed, as stated in the NCNDA: "The spirt of mutual trust and confidence shall be the underlying principle of this undertaking and the parties agree to adhere thereto."

03932-0001 324972.6



Robert Feigin
January 14, 2019
Page 4

By its conduct, AOI did the exact opposite.

**Promissory Estoppel:** KZA relied to its detriment on the assurances described above, spending increasing amounts of money on due diligence and on other matters associated with the purchase-sale negotiations. KZA would not have incurred those expenses but for the repeated assurances. That is, even setting aside the LOI and/or NCNDA, AOI is responsible for KZA's considerable due diligence and transaction related costs.

**Fraud By Concealment:** As set forth above, for two years AOI made repeated assurances that AOI would proceed with the transaction. In an additional example, on July 18, 2018, Mr. Kaplan said to Mr. McKinley: "I just ask that, if you're getting cold feet and you want to go another way please let me know so I don't go deeper in the hole if in the end you don't intend to honor our deal, because I fully do and I'm spending serious money and have a lot at risk to make that happen." Mr. McKinley responded on July 19, and he did not say that he was getting cold feet or that he did not intend to honor the deal. Instead he said: "I expect to talk substantively with you no later than sometime next week. I just need a little more time."

At no time during the many assurances did AOI inform KZA that AOI was in discussions with EUROPA. That was material information that KZA was entitled to know, yet AOI concealed that material information. It is now also plainly obvious that Mr. McKinley's request for "…a little more time…" was made with the malicious intent to deceive KZA so that AOI could continue to conceal its negotiations with EUROPA, in violation of the LOI and NCNDA, and to the detriment of KZA.

KZA will bring this fraud claim against both AOI and Mr. Alan McKinley. KZA will seek punitive damages against AOI and Mr. McKinley individually.

Both the LOI and NCNDA contain venue and forum provisions in favor of Los Angeles, California, which is where KZA will file the lawsuit.

This is also to provide formal notice of the obligation of AOI, and its officers, directors, employees, and agents, to preserve any and all documents – specifically including emails and text messages -- that may in any way be related to the subject matter of the dispute outlined in this letter.

This is additionally to demand that you advise EUROPA, and its appropriate officers, directors, employees, and agents, of AOI's obligations under the LOI and NCNDA, and that EUROPA is to preserve all relevant documents, including emails and text messages.

03932-0001 324972.6

 **TroyGould**
ATTORNEYS

Robert Feigin
January 14, 2019
Page 5


Would you let me know whether you are authorized to accept service on behalf of AOI.

Finally, KZA is open to resolving this matter short of litigation. However, time is of the essence. KZA will have no choice but to file the lawsuit together with an *ex parte* application seeking a Temporary Restraining Order to stop the sale of AOI to EUROPA. To be clear about the window to discuss settlement, we are talking about days, not weeks.

Please call to discuss. KZA reserves all rights.


Very truly yours,

Christopher A. Lilly


cc:   Ari Kaplan (via email)
      Jason de Bretteville (via email)
      David L. Ficksman, Esq. (via email)


03932-0001 324972.6

# Exhibit A

## NON-DISCLOSURE AND NON-CIRCUMVENTION AGREEMENT

THIS AGREEMENT ("Agreement") is made effective as of this __ day of January, 2018 (the "Effective Date") by and between Kaizen Advisors, LLC. (together with its affiliates, successors and assigns, all referred to as "KZA") and AO Eyewear, Inc., (together with its affiliates, successors and assigns, all referred to as "AO") on the one hand and Paulino Diaz, an individual, (together with his affiliates, successors and assigns, all referred to as "Diaz") on the other hand. KZA. AO and Diaz are each referred to herein as a "party" and, collectively, as the "parties".

1.      Purpose. The parties wish to explore a potential business relationship of mutual interest (the "Opportunity").

2.      Confidential Information. In connection with the Opportunity, each party may find it necessary to disclose certain technical or business information to the other that the disclosing party ("Disclosing Party") desires the receiving party ("Receiving Party") to treat as confidential. Confidential information ("Confidential Information") means any information disclosed to a Receiving Party by the Disclosing Party, either directly or indirectly in writing, orally or by inspection of tangible objects, including without limitation announced and unannounced products, disclosed and undisclosed business plans and strategies, financial data and analysis, customer names and lists, customer data, funding sources and strategies, and strategies involving strategic business combinations which are conspicuously labeled and/or marked as being confidential or otherwise proprietary to the Disclosing Party. If information is disclosed orally, then in order to be considered as Confidential Information hereunder, the Disclosing Party shall, at the time of making such disclosure, state that the information is to be considered as confidential and within five (5) business days following such oral disclosure, confirm in writing that the information disclosed was deemed confidential. The term Confidential Information shall not apply to any information which: (i) is already known and in the possession of the Receiving Party prior to the date of disclosure; (ii) is rightfully received from any third party without any obligation of confidence to the Disclosing Party; (iii) is or becomes publicly available through no fault of the Receiving Party; (iv) is independently developed by the Receiving Party without knowledge or use of the Confidential Information of the Disclosing Party; or (v) is released with prior written consent of the Disclosing Party.

3.      Limitation on Use. The Receiving Party agrees not to use any Confidential Information for any purpose except to evaluate and engage in discussions concerning the Opportunity. The Receiving Party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information. Without limiting the foregoing, the Receiving Party shall take at least those measures that it takes to protect its own confidential information, and, except as is expressly permitted in this Agreement, shall not use such Confidential Information for its benefit or for the benefit of any third party, regardless of whether there is no pecuniary benefit. The Receiving Party agrees not to disclose any Confidential Information to third parties or to employees of the Receiving Party, except to those third parties or employees who are required to have the Confidential Information in order to evaluate or engage in discussions concerning the Opportunity and only after first apprising such third parties or employees of their obligation to treat such disclosed information as Confidential Information of the Disclosing Party. The Receiving Party shall reproduce the

09990-1044 301167.1

Disclosing Party's proprietary rights notices on any such approved copies, in the same manner in which such notices were set forth in or on the original. The Receiving Party shall immediately notify the Disclosing Party in the event of any unauthorized use or disclosure of the Confidential Information. Notwithstanding the foregoing, in the event the Receiving Party is required by a valid court order or other government request to disclose any of the Confidential Information, the Receiving Party shall not have any obligation under this Agreement to the extent that the Receiving Party (i) notifies the Disclosing Party promptly in writing of the terms and circumstances surrounding such request so that the Disclosing Party may seek a protective order or other remedy, (ii) cooperates with the Disclosing Party to the extent reasonable with respect to such protective order, and (iii) limits disclosure to only that portion of the Confidential Information that the Receiving Party's counsel advises it is legally compelled to disclose.

4.    Non-Circumvention.    The Receiving Party agrees not to contact persons or entities first introduced by the Disclosing Party to the Receiving Party without the express prior written consent of the Disclosing Party. The Receiving Party also agrees that it shall not enter into any transactions, for financing or otherwise, with any entity (including such entity's affiliates and related entities) first introduced by the Disclosing Party without receiving express prior written consent from the Disclosing Party. The spirit of mutual trust and confidence shall be the underlying principle of this undertaking and the parties agree to adhere thereto.

5.    No Legal Relationship or Obligation.    The parties agree and acknowledge that, other than this Agreement, there is no legal relationship between them with regard to the subject matter of this Agreement, and neither party may obligate or bind the other under any circumstance. Additionally, nothing herein shall obligate the Disclosing Party or the Receiving Party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the Opportunity.

6.    NO WARRANTY.    THE CONFIDENTIAL INFORMATION DISCLOSED MAY' CONTAIN FORWARD-LOOKING STATEMENTS WHICH REFLECT THE DISCLOSING PARTY'S CURRENT VIEWS WITH RESPECT TO FUTURE EVENTS AND PERFORMANCE.    SUCH FORWARD-LOOKING STATEMENTS MAY INCLUDE PROJECTIONS WITH RESPECT TO EXPANSION STRATEGIES AND BUSINESS OPERATIONS, DEVELOPMENT OF SERVICES, USE OF PROCEEDS, PROJECTED CAPITAL EXPENDITURES, LIQUIDITY, DEVELOPMENT OF ADDITIONAL REVENUE SOURCES, DEVELOPMENT AND EXPANSION OF MARKETING RELATIONSHIPS, MARKET ACCEPTANCE, TECHNOLOGICAL ADVANCEMENT, ABILITY TO DEVELOP "NAME" AWARENESS AND GLOBAL EXPANSION. ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN SUCH FORWARD-LOOKING STATEMENTS.    DUE TO SUCH UNCERTAINTIES, THE RECEIVING PARTY IS CAUTIONED NOT TO PLACE UNDUE RELIANCE UPON SUCH FORWARD-LOOKING STATEMENTS.    ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS".    THE DISCLOSING PARTY MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

7.    Return of Materials.    All documents and other tangible objects containing or representing Confidential Information and all copies thereof which are in the possession of the




- 2 -

99990-1044 301167.1

Receiving Party shall be and remain the property of the Disclosing Party and shall, subject to applicable regulations and laws, be promptly returned or destroyed by the Receiving Party upon the Disclosing Party's request.

8.　　Term. This Agreement shall commence upon the above Effective Date and terminate on the third anniversary thereof.

9.　　Remedies. The Receiving Party agrees that any violation or threatened violation of this Agreement will cause irreparable injury to the Disclosing Party, entitling the Disclosing Party to obtain injunctive relief in addition to all legal remedies.

10.　　Miscellaneous. This Agreement shall bind and inure to the benefit of the parties hereto and their successors and assigns. This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. By execution and delivery of this Agreement, the parties agree and accept that any legal action or proceeding brought with respect to this Agreement shall be brought in the State of California or the United States District Court for the Central District of California, Los Angeles, California, and the parties expressly waive their right to a trial by jury and any objection to personal jurisdiction, venue or forum non conveniens. This document contains the entire agreement between the parties with respect to the subject matter hereof. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision hereof. If any provision of this Agreement shall be held to be invalid or unenforceable, in whole or in part, the remaining provisions shall nevertheless remain in full force and effect as if the unenforceable portion or portions were deleted. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto.

In concurrence with and acceptance of the foregoing, the parties have executed this Agreement as of the Effective Date:

For: KAIZEN ADVISORS, LLC　　　　　　　For: AO EYEWEAR, INC.

By:＿＿＿＿＿＿＿＿＿＿＿　　　　　　　By:＿＿＿＿＿＿＿＿＿＿＿　1-16 2018
Name:  Ari Kaplan, Managing Member　　　　Name:  Alan McKinley, CEO

PAULINO DIAZ

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Name:  Paulino Diaz, an individual

- 3 -

09990-1044 301167 1